USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 17, 2018

AUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
:
EDWIN MALAVE JR.,                                      :
:
                             Plaintiff,          :
:
                v.                                    :   16 Civ. 8100 (KPF)
:
FERNANDO FERNANDEZ, COACH USA,                         :   **OPINION AND ORDER**
INC., OLYMPIA TRAILS BUS COMPANY,                      :
INC., NEW JERSEY TRANSIT PRICARR,                      :
and EDWIN MALAVE,                                      :
:
                            Defendants.         :
:
------------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Edwin Malave Jr. alleges that in December 2015, a bus driven by Defendant Fernando Fernandez ("Defendant Fernandez") — and owned and operated by Defendants Coach USA, Inc., Olympia Trails Bus Company, Inc., and New Jersey Transit Pricarr (together with Defendant Fernandez, the "Bus Defendants") — rear-ended a car in which Plaintiff was a passenger. The driver of that car was Plaintiff's father, Edwin Malave, whom Plaintiff has also named as a defendant ("Defendant Malave," and together with Bus Defendants, "Defendants"). Plaintiff has not returned to work since the accident, and he now moves for partial summary judgment on the issue of whether, as a result of the accident, Plaintiff suffered a "serious injury" within the meaning of New York Insurance Law § 5102(d). Because the record presents a genuine dispute of material fact as to whether Plaintiff's claimed injuries resulted from the accident, the Court denies the motion.

## BACKGROUND[1]

### A. Factual Background

#### 1. The Accident and Plaintiff's Initial Medical Treatment

This case involves a car accident that allegedly occurred on December 5, 2015, while Plaintiff was a passenger in a car driven by his father, Defendant Malave. (*See* Pl. 56.1 Reply ¶¶ 7-8). According to Plaintiff, while that car was stopped at a red light, a bus owned by the Bus Defendants and driven by Defendant Fernandez struck the rear of the car. (*See id.* at ¶ 8). The following

---

[1] This Opinion draws its facts from the Amended Complaint (Dkt. #20 ("Am. Compl.")), Plaintiff's Reply Statement Pursuant to Local Rule 56.1 (Dkt. #70-8 ("Pl. 56.1 Reply")), and certain exhibits submitted by the parties in conjunction with the motion for partial summary judgment. On Plaintiff's part, those exhibits include Plaintiff's Medical Records from the Lehigh Valley Physician Group (Pl. Ex. J (Dkt. #62-15 (LVPG Med. Recs.))), Plaintiff's Medical Records from St. Luke's Hospital (Pl. Ex. Q (Dkt. #62-34 ("St. Luke's Hosp. Med. Recs."))), Plaintiff's Medical Records from Dr. Christopher Lycette (Pl. Ex. R (Dkt. #70-1 ("Lycette Med. Recs."))), an affidavit from Dr. Christopher Lycette (Pl. Ex. K (Dkt. #62-18 ("Lycette Aff."))) and the exhibits attached thereto, Plaintiff's Notice of Award from the Social Security Administration (Pl. Ex. M (Dkt. #62-27 ("SSA Award Notice"))), and an Expert Report by Dr. Jeffrey D. Klein (Pl. Ex. N (Dkt. #62-28 ("Klein Initial Report"))). The Bus Defendants have also submitted exhibits as attachments to the Declaration of Lindsay J. Kalick in Opposition to the Motion for Partial Summary Judgment, including an addendum to Dr. Jeffrey Klein's Initial Expert Report (Kalick Decl., Ex. 2 (Dkt. #65-1 ("Klein Addendum"))), an Expert Report by Dr. Calum G. A. McRae (Kalick Decl., Ex. 2 (Dkt. #65-2 ("McRae Report"))), an Expert Report by Dr. Audrey Eisenstadt (Kalick Decl., Ex. 4 (Dkt. #65-4 ("Eisenstadt Report"))), and Dr. Christopher Lycette's Deposition Transcript (Kalick Decl., Ex. 5 (Dkt. #65-5 ("Lycette Dep."))). For ease of reference, the Court refers to the Plaintiff's Memorandum of Law in Support of the Motion for Partial Summary Judgment as "Pl. Br." (Dkt. #62-35); the Bus Defendants' Memorandum of Law in Opposition to the Motion for Partial Summary Judgment as "Def. Opp." (Dkt. #66); and Plaintiff's Reply Affirmation as "Pl. Reply Aff." (Dkt. #70).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in either party's Rule 56.1 Statement is supported by evidence and denied with merely a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

day, December 6, 2015, Plaintiff reported to the emergency room at St. Luke's Hospital in Allentown, Pennsylvania, complaining of pain in his lower back and neck that was not immediate after the accident but increased gradually after the impact. (*See id.* at ¶ 9; St. Luke's Hosp. Med. Recs.). Plaintiff was diagnosed with strains to his right trapezius and lower back, and was prescribed ibuprofen and a muscle relaxer before being discharged. (*See* St. Luke's Hosp. Med. Recs.). An x-ray taken during Plaintiff's December 6, 2015 hospital visit did not reveal any evidence of an acute cervical fracture. (*See id.*). On December 8, 2015, Plaintiff began treating and receiving physical therapy at Lehigh Valley Physician Group Internal Medicine, for diagnoses of pain in his lower back and shoulder, and sciatica. (*See* LVPG Med. Recs.).

### 2. Plaintiff's Spinal Surgery

Some three months later, on March 10, 2016 — and after physical therapy failed to remedy Plaintiff's pain — Plaintiff reported to Dr. Christopher Lycette, a neurological surgeon, for an evaluation. (*See* Lycette Med. Recs.). A report prepared by Dr. Lycette that accompanied records of his treatment explains that Plaintiff underwent an MRI on February 12, 2016, which revealed "a large, central disc herniation at L4-5 with severe central canal stenosis," and that "L5-S1 had a broad based disc herniation with moderate to severe bilateral foraminal stenosis (greater on the right) and a disc bulge at L3-4." (*Id.*). "The radiologist also commented on likely bilateral pars defects at L5-S1 with mild grade 1 anterolithesis." (*Id.*). Given these findings and Plaintiff's reported

3

discomfort, Dr. Lycette "recommended surgical decompression and stabilization with a L4-5 and L5-S1 posterior lumbar interbody fusion procedure." (*Id.*).

On June 15, 2016, Plaintiff received surgery from Dr. Lycette, involving "L4 and L5 laminectomies to decompress the central canal as well as removal of the L4-5 and L5-S1 discs, placement of synthetic cages in the disc spaces and pedicle screws into L4, L5 and S1." (Lycette Med. Recs.). After the surgery, Plaintiff reported that his symptoms gradually lessened, but Dr. Lycette anticipated a "lengthy recovery." (*Id.*).

### 3. **Plaintiff's Unemployment and Consequent Disability Benefits**

At the recommendation of his treating physicians, Plaintiff has not returned to his prior employment as a locksmith since the accident. (*See* Pl. 56.1 Reply ¶ 10; *see, e.g.*, Lycette Aff., Ex. A). As a result, Plaintiff received disability benefits through his former employer's insurance policy. (Pl. 56.1 Reply ¶ 11). In addition, on February 12, 2017, the Social Security Administration ("SSA") awarded Plaintiff disability benefits to cover the period of unemployment beginning June 2016. (*Id.* at ¶ 16). The letter from the SSA informing Plaintiff of his award states that the SSA "found that [Plaintiff] became disabled under our rules on December 5, 2015," and because an applicant "must be disabled for five full calendar months in a row" to qualify for disability benefits, "[t]he first month [Plaintiff was] entitled to receive benefits [was] June 2016." (SSA Award Notice).

### 4. Dr. Lycette's Opinions on the Cause of Plaintiff's Injuries

In various statements over the course of this litigation, Dr. Lycette has conveyed his opinion that the December 2015 accident caused Plaintiff's injuries. For instance, during a March 30, 2017 deposition, Dr. Lycette responded in the affirmative to the question whether he "believe[d] that the accident of December 5, 2015 caused [Plaintiff's] injuries and the symptoms that" he had. (Lycette Dep. 68:4-14). He also testified, however, that disc degeneration would increase an individual's susceptibility to disc injury as a result of a traumatic event (*id.* at 68:15-18); that he could *not* determine whether Plaintiff's stenosis "was traumatic in origin" as opposed to degenerative (*id.* at 42:20-43:6); and that Plaintiff displayed "significant bone spurring," some of which "was certainly present before his accident" (*id.* at 43:17-23).

Yet in an affidavit from Dr. Lycette — dated *after* his deposition, on October 31, 2017 — his testimony is much less equivocal on the issue of causation. He states, "[i]t is [his] opinion within a reasonable degree of medical certainty that [Plaintiff's] injuries, the medical treatment and their sequ[e]lae … were traumatically induced and as a result of the motor vehicle accident of December 5, 2015." (Lycette Aff. ¶ 10). He also states that "it is [his] opinion within [a] reasonable degree of medical certainty that [Plaintiff] has suffered a significant limitation of use of his lumbar spine as a result of the subject accident." (*Id.* at ¶ 13).

### 5. Defendants' Expert Witnesses and Their Opinions on the Cause of Plaintiff's Injuries

As pertinent to the instant motion, Defendants have submitted reports from three expert witnesses regarding the alleged accident and the injuries Plaintiff claims to have suffered as a result. The Court discusses the salient points of these reports in more detail below; here, the Court provides an overview of the reports for context. Defendants rely on the opinions of (i) Dr. Jeffrey D. Klein, a spinal surgeon with the New York University Hospital for Joint Diseases (*see* Klein Initial Report); (ii) Dr. Audrey Eisenstadt, a radiologist (*see* Eisenstadt Report); and (iii) Dr. Calum G.A. McRae, a biomechanical engineer (*see* McRae Report; Def. Opp. 3).

All three defense witnesses express skepticism that the accident caused Plaintiff's injuries; rather, they contend that the injuries were related to preexisting, degenerative conditions. For instance, Dr. Klein opines that Plaintiff's MRI scan revealed "multilevel degenerative/chronic radiographic features [that] are the hallmark of preexisting radiographic findings," which, he believes "with reasonable medical certainty existed prior to the accident on December 5, 2015." (Klein Initial Report 4). Similarly, Dr. Eisenstadt remarks that "[t]he calcified disc herniation seen at the L4-5 level on the original MRI scan is associated with discogenic ridging or a bony response to the chronic disc herniation, a process months to years in development and due to its extent years in origin." (Eisenstadt Report). Somewhat more plainly, Dr. McRae concludes that "[t]here is no reason to expect that the claimed thoracic and lumbar spine injuries were caused by the subject incident." (McRae Report 9).

**B.     Procedural Background**

Plaintiff initiated this action in New York State Supreme Court, Bronx County, on or about May 19, 2016.  (*See* Dkt. #1).  On October 17, 2016, Defendants removed the case to federal court.  (*Id.*).  On November 10, 2016, the Court issued a case management plan allowing Plaintiff to amend his complaint within 30 days (Dkt. #19), and on November 14, 2016, Plaintiff filed an amended complaint alleging "[t]hat [D]efendants, their servants, agents and/or their employees were negligent and indulged in culpable conduct by reason of the recklessness and carelessness in the ownership, operation, maintenance, management and control of" the motor vehicles involved in the alleged accident.  (Am. Compl. ¶ 49).  Plaintiff also alleges that he "sustained a serious injury as defined in §[ ]5102(d) of the Insurance Law of the State of New York and/or economic losses defined by §[ ]5102(a) of the Insurance Law of the State of New York."  (*Id.* at ¶ 54).

On September 8, 2017, Plaintiff submitted a letter to the Court indicating his intention to move for partial summary judgment "on the issue of serious injury pursuant to New York [I]nsurance [L]aw §[ ]5102(d)."  (Dkt. #60).  The Court held a conference on September 29, 2017, during which it set a briefing schedule for Plaintiff's anticipated motion.  (*See* Dkt. #64).  In accordance with that schedule, Plaintiff filed a motion for partial summary judgment along with supporting papers on November 10, 2017.  (Dkt. #62).  The Bus Defendants timely opposed the motion on December 15, 2017 (Dkt. #65-66), and Defendant Malave filed a two-page letter in opposition to the motion three days

after the deadline for responses, in which letter he essentially adopted the Bus Defendants' arguments (Dkt. #68). Plaintiff replied to Defendants' opposition submissions on January 5, 2018. (Dkt. #70). Accordingly, the motion is fully briefed and ripe for decision.

## DISCUSSION

### A. Summary Judgment Under Federal Rule of Civil Procedure 56

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp. v. Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Rather, the

non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). In considering "what may reasonably be inferred" from evidence in the record, however, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, … conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita,* 475 U.S. at 587; *Wyler* v. *United States,* 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

### B. A Genuine Dispute of Fact Remains as to Whether Plaintiff's Injuries Were Caused by the Accident

For the purposes of the instant motion, Defendants do not contest that the December 5, 2015 accident occurred or that Plaintiff has not returned to work for his prior employer since that date. Instead, Defendants argue that the

9

record does not establish, as a matter of law, a causal connection between Plaintiff's claimed injuries and the accident. (*See, e.g.*, Def. Opp. 2). The Court agrees.

### 1. Applicable Law

Under New York's No-Fault Law, a plaintiff injured in a motor vehicle accident may only recover for non-economic loss if he or she sustained a "serious injury." N.Y. Ins. Law § 5104(a); *Oberly* v. *Bangs Ambulance Inc.*, 96 N.Y.2d 295, 298 (2001). A "serious injury" includes

> a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). New York courts refer to this category of serious injury as "the 90/180 category." *See, e.g.*, *Toure* v. *Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 357 (2002); *Zeigler* v. *Ramadhan*, 774 N.Y.S.2d 211, 213 (4th Dep't 2004); *Van Norden-Lipe* v. *Hamilton*, 742 N.Y.S.2d 173, 174 (3d Dep't 2002).

In order to establish a serious injury within the 90/180 category, a plaintiff must show that his or her injuries were "medically indicated and causally related to the injuries sustained in the accident," and that such injury "would have caused the alleged limitations on the plaintiff's daily activities." *Monk* v. *Dupuis*, 734 N.Y.S.2d 684, 688-89 (3d Dep't 2001) (quoting *Blanchard* v. *Wilcox*, 725 N.Y.S.2d 433, 436 (3d Dep't 2001)). As courts within this

District have noted, such a showing requires a plaintiff to "show [that] the injury was causally related to the accident"; thus, "medical evidence that the claimed injuries were not caused by the accident, even if the evidence is based on an examination conducted long after the accident," may defeat a plaintiff's claim. *Rogers* v. *McLamb*, No. 04 Civ. 7043 (HBP), 2006 WL 2734228, at *5 (S.D.N.Y. Sept, 22, 2006) (collecting cases). Indeed, New York courts have refused to find a causal connection between an alleged accident and injury — and thus found that a plaintiff did not suffer a "serious injury" — where the record contains evidence of preexisting injuries or degenerative conditions unrelated to the accident. *See, e.g., Wiles* v. *Gray*, 935 N.Y.S.2d 218, 219 (3d Dep't 2011) (affirming dismissal of claims where defendant submitted evidence showing preexisting injury and degenerative disc disease); *Moses* v. *Gelco Corp.*, 880 N.Y.S.2d 291, 291-92 (1st Dep't 2009) (affirming dismissal where plaintiff was involved in earlier accident after which he brought suit claiming injuries "virtually identical" to those at issue and suffered injuries as result of degenerative condition); *Dabiere* v. *Yager*, 748 N.Y.S.2d 38, 39 (3d Dep't 2002) (affirming dismissal where plaintiff suffered from degenerative condition and had sustained injuries prior to accident).[2]

---

[2] Given this clear precedent, Plaintiff's position that the source of Plaintiff's injury, even if "a pre-existing condition," "does not have any bearing on whether or not [he] suffered a 'serious injury'" is incorrect. (Pl. Br. 8). Tellingly, Plaintiff cites to no authority for this proposition, and his reply to Defendants' arguments suggests that Plaintiff fundamentally misunderstands his burden of proof. (*See* Pl. Reply Aff. ¶ 6 ("It is [P]laintiff's position in this motion that … there will be issues of fact for a jury to determine with regards to causation of some of the [P]laintiff's injuries."), ¶ 7 ("Certainly, the jury will have to determine whether or not [P]laintiff sustained all of the claimed injur[i]es as a result of this motor vehicle incident.")).

"[T]he New York Court of Appeals [has] held that a court should decide the threshold question of whether the evidence would warrant a jury finding that the injury qualifies as a 'serious injury.'" *Yong Qin Luo* v. *Mikel*, 625 F.3d 772, 776-77 (2d Cir. 2010) (citing *Licari* v. *Elliott*, 57 N.Y.2d 230, 236 (1982)). New York courts apply a burden-shifting framework in analyzing summary judgment motions on the issue of whether a plaintiff has suffered a "serious injury": First, "[a] plaintiff moving for summary judgment on the issue of serious injury must establish, *prima facie*, that he or she sustained a serious injury within the meaning of Insurance Law § 5102(d), and 'that the [serious] injury was causally related to the accident.'" *Alexander* v. *Gordon*, 945 N.Y.S.2d 397, 400 (2d Dep't 2012) (alteration in original) (quoting *Kapeleris* v. *Riordan*, 933 N.Y.S.2d 92, 93 (2d Dep't 2011)). After satisfying this burden, a defendant must present evidence showing that a triable issue of fact remains as to whether the plaintiff has suffered a serious injury that bears a causal nexus to the accident. *See Elshaarawy* v. *U-Haul Co. of Miss.*, 900 N.Y.S.2d 321, 324 (2d Dep't 2010). At each step, a party must support their position with "sworn affidavits by physicians." *Mikel*, 625 F.3d at 777 (quoting *Barth* v. *Harris*, No. 00 Civ. 1658 (CM), 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2011)).

### 2. Analysis

The record presents a genuine dispute of fact as to whether the December 2015 accident caused Plaintiff's injuries. Plaintiff's treating surgeon, Dr. Lycette, opined at both his deposition and through his affidavit that, based

on his review of Plaintiff's MRI results, the accident caused Plaintiff's back injuries. (*See* Lycette Dep. 68:4-14; Lycette Aff. ¶ 10). This showing suffices to satisfy Plaintiff's *prima facie* burden of presenting a physician's sworn affidavit indicating that Plaintiff suffered an injury that was causally connected to the accident. *See, e.g.*, *Elshaarawy*, 900 N.Y.2d at 324 (holding that plaintiff satisfied burden by submitting affirmation of orthopedic surgeon and plaintiff's own affidavit); *Autiello* v. *Cummins*, 890 N.Y.S.2d 652, 653-54 (3d Dep't 2009) (holding that plaintiff satisfied burden by submitting affidavits from treating dentists); *Mustello* v. *Szczepanski*, 667 N.Y.S.2d 63, 64 (2d Dep't 1997) (holding that plaintiff satisfied burden by submitting affidavit of single treating physician).[3]

But Defendants have brought forth abundant evidence creating a genuine dispute of fact as to causation. Dr. Eisenstadt's opinion presents a lengthy conclusion, based on a review of "serial radiographs, CT scans, MRI scan and radiographs taken from within two-and-a-half months following the incident through one year, three-and-a-half months following the incident," that Plaintiff suffered from "chronic abnormalities involving the lower lumbar spine that have no traumatic basis or association with the" accident.

---

[3] The Court finds little probative value in the disability benefits Plaintiff has received through Social Security and his former employer's insurance policy. Indeed, courts have refused to find that a plaintiff suffered a serious injury even if the plaintiff received such benefits. *See, e.g.*, *Conley* v. *United States*, No. 08 Civ. 820 (HBS), 2010 WL 6370542, at *5 (W.D.N.Y. Sept. 2, 2010) (awarding summary judgment to defendants where plaintiff failed to prove serious injury despite receiving social security benefits), *report and recommendation adopted*, No. 08 Civ. 820 (RJA), 2011 WL 1156707 (W.D.N.Y. Mar. 28, 2011); *Berk* v. *Lopez*, 718 N.Y.S.2d 332, 333 (1st Dep't 2000) (affirming directed verdict for defendants where plaintiff failed to prove serious injury despite accepting disability benefits for one year).

(Eisenstadt Report 6). As support for this conclusion, Dr. Eisenstadt points to various examples of chronic degenerative conditions. A few of these examples: Plaintiff presented "[n]o acute fractures … in the region of the pars interarticularis to indicate any acute or traumatic etiology for this defect in the posterior bony spinal canal," leading Dr. Eisenstadt to conclude that the injuries resulted from "likely a fairly common congenital variant, allowing for the slippage of the L5 vertebra … and predisposing to abnormal movement in the lower lumbar spine and premature degenerative disc disease." (*Id.*). She also noted "[a]nterior osteophyte formation … at the L4-5 and L5-S1 levels on both the MRI scan and CT scan shortly following the incident," which were then "over six months in origin and due to their extent more likely years in development." (*Id.*). Additionally, Dr. Eisenstadt observed "calcified disc herniation … at the L4-5 level on the original MRI scan," the very existence of which "indicates its presence for months to years and could not have occurred in two and a half months' time." (*Id.*).

Further support for the conclusion that Plaintiff's injuries were the product of chronic, degenerative conditions is found in Dr. Klein's report. Dr. Klein notes that x-rays taken on Plaintiff's first hospital visit the day after the alleged accident "reveal degenerative changes and loss of disc height" as well as "diffuse spondylosis throughout the cervical spine with variable loss of disc height and degenerative disc changes." (Klein Initial Report 3-4). In addition, a May 17, 2016 CT scan "revealed degenerative endplate sclerosis and chronic disc space narrowing," while a February 12, 2016 MRI indicated

"multilevel lumbar spondylosis and disc degeneration with associated herniations," as well as "[m]ultilevel facet arthropathy and ligamentum flavum hypertrophy[.]" (*Id.* at 4). In Dr. Klein's view, "[s]uch multilevel degenerative/chronic radiographic features are the hallmark of preexisting radiographic findings and with reasonable medical certainty existed prior to the accident on December 5, 2015." (*Id.* (emphasis removed)). Dr. Klein also considers a prior injury to Plaintiff's neck or lower back as a result of a car accident in 1995, which accident required significant chiropractic treatment, and the fact that Plaintiff's work at times required heavy lifting. (*Id.* at 4-5).[4] For Dr. Klein, "[a]ll of this taken together represents preexisting conditions in both the neck and lower back that are longstanding." (*Id.* at 5).

Finally, Dr. McRae arrives at similar conclusions as to causation, based on his "analysis of the materials available and the claimed injuries of [Plaintiff], using scientific and engineering methodologies generally accepted in the biomechanical engineering community and automotive industry." (McRae Report 1). Given this data, including the negligible damage observed on Defendant Malave's car and the accounts of a low-speed collision (if any), Dr. McRae estimated that any impact involved in the accident occurred at a speed "significantly less than 10 [miles per hour]," and that "[t]he accelerations

---

[4] Plaintiff does not specifically dispute these facts, or the fact that the prior accident also resulted in litigation. (*Cf.* Pl. 56.1 Reply ¶ 24 ("[Plaintiff] was an infant at the time of [the lawsuit stemming from the 1995 accident] and made no claims [but] [c]laims were made on his behalf by his mother and attorney."); Pl. Dep. 17:19-22 (Plaintiff's testimony that he required chiropractic treatment as a teenager because he "was in a car accident"), 141:10-25 (Plaintiff's testimony that his work as a locksmith required him lifting doors weighing "three, four hundred pounds")).

experienced by [Plaintiff] were within the limits of human tolerance and the personal tolerance levels of [Plaintiff]," which "were comparable to that experienced during various daily activities." (*Id.* at 6-8).  Drawing from these findings, Dr. McRae concluded that "[t]here is no injury mechanism present in the subject incident to account for [Plaintiff]'s claimed thoracic and lumbar spine injuries," and therefore "a causal relationship between the subject incident and the claimed thoracic and lumbar spine injuries cannot be made." (*Id.* at 12).

In short, the evidence on which Defendants rely thus raises a genuine dispute of material fact as to whether Plaintiff's claimed injuries are causally connected to the alleged December 5, 2015 collision.  For that reason, Plaintiff's motion is denied.

## CONCLUSION

For the reasons above, Plaintiff's motion for partial summary judgment is DENIED.  The Clerk of Court is directed to terminate the motion appearing at Docket Entry #62.  The parties are ORDERED to appear for a pretrial conference on September 11, 2018, at 2:00 p.m., at which conference the parties will discuss scheduling a trial in this matter.

SO ORDERED.

Dated:     August 17, 2018
               New York, New York

                                              KATHERINE POLK FAILLA
                                              United States District Judge